**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

          Plaintiff,

vs.

DANIEL J. FELIX,

          Defendant.

Civil Action No. 3:16-cv-147

Electronically Filed

JURY TRIAL DEMANDED

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM IN**
**OPPOSITION TO PLAINTIFF/COUNTERCLAIM**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

AND NOW, defendant/counterclaim plaintiff Daniel J. Felix ("defendant"), by and through his attorneys, Bordas & Bordas, PLLC, files this Memorandum in Opposition to Plaintiff/Counterclaim Defendant's ("plaintiff") Motion for Partial Summary Judgment and states as follows:

I.      **Summary of the Argument**

The corporate plaintiff, equipped with Special Investigations Unit ("SIU") having extensive education and experience in criminal justice, and armed with experienced legal counsel, without reasonable justification, denied the defendant's claims, having an estimated value in excess of a million ($1,000,000.00), and without providing the defendant an opportunity to be heard on the facts supporting the denial of coverage, surreptitiously sued him with an unsubstantiated fraud claim on the basis that the defendant willfully misrepresented the loss of a purse and a set of earrings having a combined estimated value of four thousand ($4,000.00) dollars. The plaintiff knew or recklessly disregarded that it did not have any evidence, let alone clear and convincing evidence, to show that the defendant willfully misrepresented the loss of these items,

but nonetheless denied the defendant's claims, and intentionally and unreasonably failed to provide the cooperative and compliant defendant an opportunity to be heard on the facts supporting the plaintiff's coverage decision, and then unfairly sprinted to the courthouse with a baseless fraud claim in a calculated scheme to ambush the unrepresented defendant, and unfairly increase its chances of securing a favorable judgment.

The plaintiff is trying to distract the court with irrelevant and immaterial matter. Despite the plaintiff's contentions, the defendant is not critical of the plaintiff's decision to refer the defendant's claims to its SIU, nor is he challenging the SIU department's competency. The defendant is not troubled with the time it took the plaintiff to complete its arson investigation, nor is the defendant critical of the plaintiff's decision to refer the matter to legal counsel. Moreover, despite the fact that the plaintiff's investigation was incomplete, sloppy, and led to an incorrect decision, the defendant is not claiming bad faith on that basis.  To be sure, the basis of the defendant's bad faith claim is not that the plaintiff was negligent and arrived at the wrong result, which is true and will be proven by the credible evidence, the defendant's claim for bad faith is grounded in the plaintiff's baseless denial of the defendant's claim, and its unjust tactics in surprising the unwitting defendant with a frivolous fraud claim.

In a desperate attempt to justify its decision to deny the defendant's claims and sue the defendant for fraud, the plaintiff is asking this Honorable Court to ignore the utter lack of evidence to support its fraud claim, and instead, focus on the irrelevant "red flags" it identified during the claims handling process. Red flags, which could not and did not provide the plaintiff with a reasonable basis to deny the defendant's claims; and, more importantly, by the plaintiff's own admission, were *not* material to its decision to deny the defendant's claims. Furthermore, the plaintiff is suggesting that it acted reasonably in denying the defendant's claims and suing him for

fraud based upon the "advice" of counsel, who did nothing more than "rubber stamp" the plaintiff's belief that it had sufficient evidence to support a fraud claim. Finally, the plaintiff is attempting to distract this Court by asking the Court to consider information the plaintiff acquired *after* it made its decision to deny the defendant's claims to justify its conduct; information that was *not* material to the plaintiff's decision to deny the defendant's claims and/or sue him for fraud.

For these reasons, there are genuine issues of material fact for the jury to consider in determining whether the plaintiff knowingly or recklessly disregarded that it did not have a reasonable basis to deny the defendant's claim and sue him for fraud, particularly without providing the cooperative defendant with an opportunity to be heard on the facts supporting the denial of the claim. Therefore, the plaintiff's motion for partial summary judgment should be denied as a matter of law.

## II.     Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202 (1986). All facts and inferences are construed in the light most favorable to the non-moving party. *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir.1998) (*citing Peters v. Delaware River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1349 (3d Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994)).

The substantive law will identify which facts are "material." *Id*. (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.). Therefore, "[o]nly disputes over facts that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment." *Id.* An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* [T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

[A]t the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder. *Boyle,* 139 F.3d at 393 (*citing Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir.), *cert. denied,* 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993)). Therefore, to raise a genuine issue of material fact, "'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Boyle,* 139 F.3d at 393 *(citing Petruzzi's IGA Supermarkets, Inc.,* 998 F.2d at 1230; *see also Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

### III.    Argument

The defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a purse and a set of earrings; and therefore, the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of a reasonable basis to deny the defendant's claims and sue him for fraud.[1]

---

[1] Defendant/counter claim plaintiff incorporates herein by reference his Motion for Summary Judgment, Concise Statement of Material Facts in Support of Defendant/Counterclaim Plaintiff's Motion for Summary Judgment, the Appendix thereto, and his Memorandum in Support of Defendant/Counterclaim Plaintiff's Motion for Summary

42 Pa.C.S.A. § 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

*Id*.

To succeed on a bad faith (§ 8371) claim, an insured must prove, by clear and convincing evidence: the insurer (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005); *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 376 (Pa. 2017); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1997). "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.,* 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012), (*citing J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir.2004)) (*quoting Bostick v. ITT Hartford Group, Inc.,* 56 F.Supp.2d 580, 587 (E.D.Pa.1999)) (quotations omitted).

The first prong of the *Babayan* test is objective, "so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot" as a matter of law be bad faith. *Id.* (*citing Wedemeyer v. U.S. Life Ins. Co. in City of New York,* No. 05–6263, 2007

---

Judgment in support of its opposition to Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment. (Docs. 45-49.)

WL 710290, at *9 (E.D.Pa. Mar. 6, 2007); *see also Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n. 3 (E.D.Pa.1998) (a defendant may prevail at the summary judgment stage by "affirmatively demonstrating a reasonable basis for its actions.").

The second part of the bad faith test is subjective, and requires proof of "*scienter*": that is, an element of intent or recklessness on the part of an insurance company to mistreat its policyholder. *Rancosky*, 170 A.3d at 376; *see also Employers Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 490-91 (W.D. Pa. 2007) ("There is a requisite level of culpability associated with a finding of bad faith."). [P]roof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371. *Rancosky*, 170 A.3d at 377. [M]ere mistake, misjudgment, or even negligence does not rise to the level of bad faith under § 8371. *See, e.g., Klinger v. State Farm Mut. Auto. Ins. Co.*, 895 F. Supp. 709, 714 (M.D. Pa. 1995).

[A] variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Hamm*, 908 F. Supp. 2d at 669. (*citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir.1999)); (*see also Terletsky*, 649 A.2d at 688). Bad faith may occur "when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Id*. at 672. (*citing Coreh Const. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Pa.Commw.Ct.2003); (*see also Gold v. State Farm Fire & Cas. Co.*, 880 F.Supp.2d 587, 597 (E.D.Pa.2012) (An insurer must "properly investigate claims prior to refusing to pay the proceeds of the policy to its insured.") (*quoting Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92 (Pa.Super.Ct.2007)). [A]n insurance company must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Id*. at

670. (*citing Mann v. UNUM Life Ins. Co. of Am.,* No. 02–1346, 2003 WL 22917545, at \*7 (E.D.Pa. Nov. 25, 2003)).

### A.  THE "RED FLAGS" ARE A "RED HERRING."

#### 1.  The Red Flags do not provide a reasonable basis to deny the defendant's claims and sue him for fraud.

The defendant does not dispute the facts underlying the "red flags" that led the plaintiff to consider the claim suspicious for arson. The defendant agrees that the referral to its SIU was appropriate and reasonable because the red flags suggested that some or all of the defendant's claim was *possibly* fraudulent.  That said, the defendant's bad faith claim is not premised on the plaintiff's identification of red flags or its decision to refer the defendant's claim to its SIU department.

Moreover, in light of the red flags, and the Policy language, which voids coverage for acts of fraud, concealment, or misrepresentation, the defendant agrees that it was reasonable for the plaintiff to conclude that further investigation was warranted by its SIU in order to determine whether the January 23, 2016 fire was accidental. However, the defendant's bad faith claim is not premised on the basis that the plaintiff unreasonably delayed its coverage position by thoroughly investigating the red flags associated with the defendant's dwelling loss claim, or the competency of the plaintiff's employees or counsel.

The defendant admits that the plaintiff's investigation into the defendant's dwelling loss claim was reasonable and sufficiently thorough to yield a reasonable foundation for the plaintiff's decision to continue its investigation into the defendant's claim for the loss of personal property. What is lost on the plaintiff is the fact that the red flags and/or the plaintiff's suspicions as to whether the fire was accidental did not provide the plaintiff with a reasonable basis to deny the defendant's claim. Specifically, Mr. Mathena offered the following testimony:

[Q.] Okay.  Through your discussions -- to the best of your recollection, through your discussions with the State Police, the Croyle Township Police Department and fire marshal, were you ever able to determine a cause of the fire?
[A.] **No.**
[Q.] Were you able to determine a cause of the fire through your own independent investigator, fire investigator?
[A.] **There -- to my recollection, there wasn't enough sufficient evidence to support a cause.**
[Q.] So would it be fair to say that the information you received through your investigation of Mr. Felix's loss of dwelling claim did not support a basis for a denial of that claim?
[A.] **That's correct.**

(Doc. 48-3, Exhibit C, Deposition of Kip Mathena, P. 116.)

Moreover, Mr. Matt Berry, the director of plaintiff's SIU, offered the following testimony concerning the fact that the red flags did not provide plaintiff with a reasonable basis to deny the defendant's claims.

[Q.] And what is your current occupation?
[A.] **I'm the Director of Special Investigations for American National Insurance.**

*********************************

[Q.] In June of 2016, were you the Director of Special Investigations for American National?
[A.] **Yes.**

*********************************

 [Q.] Would you agree with me that none of the concerns that you had, American National, that is, relative to the cause of Mr. Felix's dwelling loss was material to the decision to deny his claims?
[A.] **What I can say is there wasn't sufficient evidence to pursue those as a reason for denial.**
[Q.] Yes.  So, in other words, that information, those concerns or those red flags did not serve as a part of the basis to deny Mr. Felix's claims, fair enough?
[A.] **His -- his claim was denied for material misrepresentation.**
[Q.] Yes.  And it didn't involve any of the concerns that you had relative to the cause of the fire, correct?
[A.] **It didn't involve any of those facts, no.**

*********************************

[Q.] Okay.  So you don't have anything to -- by way of factual information to support a basis for the denial of Mr. Felix's loss of dwelling claim other than the information American National believes to have been materially misrepresented by Mr. Felix concerning the purse and the earrings?
[A.] **Yes, that -- that material misrepresentation barred coverage for the entire loss.**

(*See* Exhibit A, Deposition of Matt Berry, Pp. 6-7, 83, 110 attached to the Appendix to the Responsive Concise Statement in Support of Defendant/Counterclaim Plaintiff's Opposition to Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment.)

The plaintiff argues that the red flags provided it with a reasonable basis *to continue its investigation* into the defendant's claims – the defendant agrees. However, nowhere in the plaintiff's motion for partial summary judgment, or in its memorandum in support does plaintiff suggest that it had a reasonable basis to *deny* the defendant's claim on the basis of the red flags or any suspicions it had concerning the cause and origin of the defendant's dwelling loss claim.

> **2. The Red Flags were not material to the plaintiff's decision to deny the defendant's claims and sue him for fraud.**

Moreover, the red flags were not material to the plaintiff's decision to deny the defendant's claims and sue him for fraud. In support of the defendant's position, Mr. Mathena offered the following testimony:

> [Q.] And correct me if I'm wrong, but the basis why -- the basis why ANPAC denied Mr. Felix's claim is based on ANPAC's belief that Mr. Felix willfully misrepresented the fact that he had lost a Louis Vuitton purse and a set of diamond earrings in the fire?
> [A.] **Correct.**
> [Q.] And that's it.  There is no other information that went into serve as the basis for the denial, fair?
> [A.] **Fair.**

(Doc. 48-3, Exhibit C, Deposition of Kip Mathena, P. 154.)

> [Q.] Just a few more, Mr. Mathena. I apologize. Just to make sure we're on the same page, Mr. McMonigle went through a series of red flags with you on his examination pertaining to the multiple total loss of houses, the snowmobiling, the unusual amount of contents, or the remnants of the fire, the Hoverboard, Mr. Felix being in close proximity of the home when it was fully engulfed. Do you remember that questioning?
> [A.] **I do, yes.**
> [Q.] None of that was material and significant to the denial of Mr. Felix's claim, correct?
> [A.] **That's correct.**
> [Q.] The fact that Mr. Felix had submitted a second inventory that identified substantial amounts of cash, that information wasn't material or significant in ANPAC's decision to deny Mr. Felix's claim, was it?

[A.] **It was not.  It was a red flag as indicated.**

[Q.] So just so we're clear, the only information that was materially significant to ANPAC in its decision to deny Mr. Felix's claim was provided to ANPAC by either Kelly Madison or Ron Madison?

[A.] **That's correct.**

[Q.] So would it be fair to say that the information you received through your investigation of Mr. Felix's loss of dwelling claim did not support a basis for a denial of that claim?

[A.] **That's correct.**

[Q.] And those were just the information you received through those individuals orally, the text messages, and the photographs of the purse and diamond earrings?

[A.] **That is correct, sir.**

[Q.] There were no other facts that ANPAC relied upon to deny Mr. Felix's claim other than what we - other than what was provided to you by Mr. or Mrs. Madison?

[A.] **That's correct.**

(Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 205-06.)

Again, plaintiff offers no information or argument in its motion for partial summary judgment or it memorandum in support to show that the red flags were material to the plaintiff's decision to deny the defendant's claims and sue him for fraud.

> **3.  The Red Flags are irrelevant or more prejudicial than probative, and not admissible at trial; therefore, they should not be considered for purposes of plaintiff's motion for summary judgment.**

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. [T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

Rule 402 of the Federal Rules of Evidence provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." (*See also*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 578, 587, 113 S.Ct 2786, 2794, 125 L.Ed.2d 469 (1993)).

Rule 401 of the Federal Rules of Evidence provides:

"Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*.

In this case, the red flags do not have any tendency to make the existence of any fact that is of consequence to the determination as to whether the plaintiff had a reasonable basis for denying benefits under the policy and suing the defendant for fraud, and/or whether the plaintiff knew or recklessly disregarded its lack of a reasonable basis in denying the claim and suing the defendant for fraud. The plaintiff admits that the red flags did not provide the plaintiff with a reasonable basis to deny the defendant's claims, and/or that the red flags were material to the plaintiff's decision to deny the defendant's claims on the basis of fraud. Therefore, this Honorable Court should not consider the red flags in determining the plaintiff's motion for partial summary judgment.

Alternatively, Rule 403 of the Federal Rules of Evidence permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." *See also*, *Daubert*, 509 U.S. 595, 113 S.Ct 2798. In the present matter, there can be little doubt that if the fact finder is permitted to receive information concerning the red flags that the defendant would be unfairly prejudiced; there would be confusion of the issues; and, the jury would be misled into considering information that had nothing to do with the plaintiff's decision to deny the claim and sue the defendant for fraud.

Because the red flags are irrelevant and/or unfairly prejudicial they should not be admissible at trial; and therefore, they should not be considered for purposes of plaintiff's motion

for partial summary judgment. Even if they are considered, it is clear that the plaintiff knew that the red flags did not provide a reasonable basis for denying benefits under the Policy; otherwise, plaintiff would have denied the defendant's claims at that time. For these reasons, there is a question of material fact as to whether the plaintiff acted in good faith when it denied the defendant's claims. Therefore, this court should deny the plaintiff's motion for partial summary judgment as a matter of law.

## B.  THE PLAINTIFF'S ADVICE OF COUNSEL DEFENSE IS A RUSE.

The defendant does not deny that that an insurance company's *reasonable* reliance on the advice of counsel may be an affirmative defense in a bad faith suit. *See, e.g., Berry v. Ohio Cas. Co.*, 2015 U.S. Dist. LEXIS 86053, at *8 *M.D. Pa. July 2, 2015) (noting that reliance on the advice of counsel can be an affirmative defense to a claim of bad faith); *McCrink v. Peoples Benefit Life Ins. Co.,* 2004 U.S. Dist. LEXIS 23990, at **8-9 (E.D. Pa. Nov. 29, 2004) (same); *Robertson*, 1999 U.S. Dist. LEXIS 2991, at *12 (same). However, "[w]hen a party asserts an advice-of-counsel defense, the reasonableness of the reliance is a pertinent factor, and hence the reasonableness of the advice may be examined. *Robertson v. Allstate Ins. Co.*, No. CIV.A.98-4909, 1999 WL 179754 at *3 (E.D.Pa. March 10, 1999). An insurer's reliance on advice of counsel in denying a claim must be reasonable. (*See Klinger v. State Farm Mut. Auto. Ins. Co.*, 895 F. Supp. 709, 712 (M.D. Pa. 1995) (noting jury could determine whether insurer's reliance on counsel was reasonable or unreasonable)); *Rova Farms Resort. Inc. v. Investors Ins. Co. of Am.*, 323 A.2d 495, 490-91 (N.J. 1974) (potential liability of insurer should have been reasonably obvious irrespective of advice of counsel); James C. Nielsen, *Advice of Counsel in Insurance Bad Faith Litigation: A Substantive Framework for Pleading, Discovery and Proof*, 25 Tort & Ins. L.J. 533, 542 (1990)

("An insurer must bear the burden of establishing the fact of good faith reliance on advice of counsel.").

The defendant admits that it was reasonable for the plaintiff to retain counsel. The defendant admits that plaintiff's lawyer ("Hudock") is competent and qualified to provide legal advice regarding coverage issues and litigation. The defendant admits that Hudock correctly interpreted the terms of the fraud provision in the Policy. (Doc. 51-5, CL1915.) The defendant admits that Hudock correctly interpreted Pennsylvania law, which allows an insurer to void the Policy if the insured willfully misrepresents a material fact. (Doc. 51-5, CL1916-17.) That said, Hudock, in his capacity as an investigator, nothing more than an extension of the plaintiff's SIU, and just like the plaintiff, either knowingly or recklessly disregarded the clear lack of evidence, let alone clear and convincing evidence, to show that the defendant willfully misrepresented the loss of a purse and/or a set of earrings. For these reasons, as explained more fully in the Defendant/Counterclaim Plaintiff's Memorandum in Support of Defendant/Counterclaim Plaintiff's Motion for Summary Judgment, and in the paragraphs below, Hudock's "advice" was unsubstantiated and unreasonable.

Defendant uses the term "advice" loosely in this case because it did not take a lawyer to read the defendant's examination under oath. The plaintiff had an obligation to read the defendant's examination under oath, particularly if its plan was to deny a claim having an estimated value in excess of a million ($1,000,000.00) and sue the defendant for fraud based on purported willful misrepresentations he made under oath concerning items with an estimated value four thousand ($4,000.00) dollars.[2] It did not take a lawyer to speak with Kelly Madison.[3] It did not

---

[2] While Mr. Mathena did not recall reading the defendant's examination under oath, it would have been his practice to examine or analyze the examination under oath, either by himself or with counsel. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 121-22, 124.)
[3] Mr. Mathena spoke with Kelly Madison on multiple occasions. (Doc. 51-2, Pp. 5, 8-9, 17.)

take a lawyer to examine photographs or read text messages.[4] All of this falls within the parameters of the plaintiff's experienced SIU department. A lawyer was not needed to tell the plaintiff's SIU department, who was equipped with decades of experience in law enforcement that they did not have *any* evidence to show that the defendant willfully misrepresented the loss of a purse and set of earrings. (Doc. 46, Pp. 16-25; *See also*, the deposition of Matt Berry, attached to the defendant/counter claim plaintiff's Responsive Concise Statement in Support of D/Counterclaim P's Opposition to D's Motion for Partial Summary Judgment, as Exhibit A, Pp. 6-7, 16-17.)

For these reasons, the advice of counsel defense in this case is nothing more than a ruse. The plaintiff, and its "investigator," Hudock, knew or recklessly disregarded that it had no evidence to support a willful misrepresentation. The fact finder is authorized to make the determination whether the lawyer's conduct was reasonable, and/or whether the plaintiff's reliance on counsel's so called advice was reasonable. Therefore, there is a question of material fact whether Hudock's advice was reasonable, and/or whether the plaintiff acted in bad faith in relying on the advice of counsel and denying the defendant's claims; therefore, the plaintiff's motion for partial summary judgment should be denied as a matter of law.

## C. THE PLAINTIFF AND ITS COUNSEL KNOWINGLY OR RECKLESSLY DISREGARDED THE COMPLETE LACK OF EVIDENCE TO SUPPORT ITS DENIAL OF THE DEFENDANT'S CLAIM ON THE BASIS OF FRAUD.

It is noted that the plaintiff, in its brief in support of its motion for partial summary judgment under subpart "C." of its argument (Doc. 53, P. 20.) states that "American National reasonably concluded that Felix *made material misrepresentations*…," but conspicuously omitted from the statement is the indispensable modifier "knowingly" before the word "made." While this omission may be an oversight, it is more telling that nowhere in the plaintiff's argument does

---

[4] Mr. Mathena received text messages and photographs of the purse and earrings in Kelly Madison's possession. (Doc. 51-2, Pp. 8, 10.)

plaintiff suggest that it had evidence of a willful or intentional misrepresentation. Defendant admits that the plaintiff's investigation does not need to be flawless or eliminate all possibility that the defendant did not commit fraud; however, to have a reasonable basis to deny a claim and sue an insured on the basis of fraud, evidence of a willful misrepresentation is absolutely necessary.

18 Pa.C.S.A. § 4117(a)(2) provides in pertinent part the following:

§ 4117. Insurance fraud

(a) Offense defined.—A person commits an offense if the person does any of the following: (2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117(a)(2).[5]

Plaintiff cites to *O'Donnell v. Allstate Insurance Company*, 734 A.2d 901 (Pa. Super. 1999) to support its contention that an insured may not maintain a claim under § 8371 **even if there is a reasonable dispute of fact as to whether the insured actually committed fraud**. However, *O'Donnell* does not support such a broad sweeping contention.  The plaintiff conveniently omits the fact that in *O'Donnell*, Allstate had a reasonable basis to *investigate* the insured's property loss claims, and had not denied the insured's claim. During Allstate's investigation of the insured's claims, it identified "red flags," which warranted further investigation before Allstate could either deny the claim or provide coverage, the insured grew weary with Allstate's investigation, failed to comply with Allstate's reasonable requests for information, and actually sued Allstate under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2, forcing

---

[5] Again, the defendant fully incorporates the arguments set forth in his Memorandum in Support of Defendant/Counterclaim Plaintiff's Motion for Summary Judgment. (Doc. 46.)

Allstate to retain a lawyer to prove its reasonable handling of the insured's claims. Thus, *O'Donnell* does not stand for the proposition that an insurer is not liable for bad faith if it denies a claim and sues its insured for fraud without supporting evidence.

Plaintiff also relies heavily on *Fugah v. State Farm Fire and Casualty Company*, 2016 U.S. Dist. LEXIS 47009 (E.D. Pa. Apr. 7, 2016), to support its contention that plaintiff had a reasonable basis to deny the defendant's claim without having evidence of fraud. However, *Fugah* does not involve a bad faith claim. In *Fugah*, State Farm was granted summary judgment on two breach of contract claims, because Fugah lacked *an insurable interest* in his property because he was not a bona fide purchaser. The court in *Fugah* felt that State Farm's denial of the claims was reasonable because it had *evidence* to show that Fugah did not have an insurable interest in his home, evidence which is completely lacking in this case.

Similar to its argument concerning the arson red flags, the plaintiff continues to distract the court with irrelevant information such as the defendant's financial position and/or financial motive to commit arson and/or insurance fraud. Again, none of this information is relevant to the plaintiff's fraud claim. The plaintiff did not deny the defendant's claim or sue him based upon its suspicions that the defendant had a financial motive to destroy his dream home. Furthermore, the plaintiff's *suspicions* concerning the defendant's financial motive to commit arson or insurance fraud, does not provide it with a reasonable basis to deny the defendant's claims. Moreover, had the plaintiff bothered to conduct a thorough examination of how the defendant earns and spends his money, it would not have had to wait for the defendant to have to voluntarily disclose this information by way of an Affidavit for purposes of summary judgment motions. (See Doc. 48-1, ¶¶ 3, 28, 35-36.) Therefore, defendant's financial information, like the "red flags" identified above do not provide the plaintiff with a reasonable basis to deny the defendant's claim or sue him for

fraud. Moreover, this information, like the "red flags" identified above, is immaterial, irrelevant and prejudicial, and should not be considered for the purpose of the plaintiff's motion for summary judgment.

Furthermore, it was the defendant, through his unwavering cooperation and compliance that allowed the plaintiff to interview Ms. Madison and Ms. Merrill. The defendant encouraged the plaintiff to contact these individuals. (Doc. 48-5, P. 189.) During its investigation the plaintiff determined that Ms. Madison was in possession of a purse and a set of earrings that had been given to her by the defendant; however, the plaintiff did not develop any evidence to show that the defendant knowingly misrepresented the loss of these items in the January 23, 2016 fire.

### 1. The Purse.

Anyone who reads the defendant's examination under oath will find that the only *potential* misrepresentation the defendant made was that the purse he claimed lost in the fire was "returned" to him by his ex-fiancé, Kelly Madison, after their relationship had ended. (Doc. 48-5, P. 198; *see also* Doc. 51-5, CL 1918.) First, the defendant believes he did not misrepresent this fact. (Doc. 47, ¶ 38; Doc. 48-1, ¶¶ 23-24; Doc. 49-7, Deposition of Dan Felix, Pp. 193-95.) Second, even if he did misrepresent this fact, it was only a mistake. (*Id*.) Third, even if the defendant was mistaken in how the purse he claimed lost in the fire came to be in his house at the time of the fire, this does not mean that he was mistaken about his loss of a purse. More importantly, even if the fact finder believes that the defendant willfully misrepresented that the purse the defendant claimed lost in the fire was "returned" to him by his ex-fiancé after the relationship ended, all that has been proven is that the defendant willfully misrepresented how the purse came to be in his house at the time of the fire, not that he lost the purse! Finally, and most importantly, *during the claims process*, Ms. Madison actually told the plaintiff and its attorney that she did NOT have specific information on

the contents of the defendant's home. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 141-43; Doc. 51-2, P. 11-12.) All of this information was known to the plaintiff at the time it denied the defendant's claim and sued him for fraud. Consequently, the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a purse.

Moreover, had the plaintiff continued its investigation, as any reasonable insurer would have under the circumstances, the plaintiff would have determined that the defendant was absolutely certain he lost a *white* purse in the fire. (Doc. 48-1, ¶¶ 11, 13, 19, 37-38.) Ms. Madison is in possession of a *brown* purse. (*Id. See also* Doc. 49-2.) Ms. Madison has no idea whether the defendant lost a purse in the fire. (Doc 47, ¶ 48; Doc. 49-1, Deposition of Kelly Madison, Pp. 38-47.) Ms. Madison has no idea whether the defendant purchased a second purse for her. (*Id.*) A white purse was observed to be in the defendant's house by the defendant's friend, Jessica Bloom, and his sister, Becky Shirk, in the months leading up to the fire. (Doc. 47, ¶ 50; Doc. 49-9, Deposition of Jessica Bloom, Pp. 76-82; Doc. 49-10, Deposition of Becky Shirk, Pp. 53-59.) Thus, there is absolutely no evidence, none, to show that the defendant misrepresented the loss of a purse in the January 23, 2016 fire.   Accordingly, the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a purse.

Furthermore, had the plaintiff continued its investigation, the plaintiff would have learned that the defendant could have been mistaken in his determination as to how the purse he claimed lost in the fire came to be in his house at the time of the fire. After being sued, the defendant explained that when he presented the purse to Ms. Madison in February 2015, more than a year before his statement under oath, he and Ms. Madison were in an argument; under the influence of

alcohol, and that Ms. Madison had passed out. (Doc. 47, ¶¶ 38, 42; Doc. 48-1, ¶¶ 21-24; Doc. 49-7, Deposition of Dan Felix, Pp. 193-195, 198.) Ms. Madison admitted that they broke off their engagement in February 2015, and during one of their arguments over a prenuptial agreement, she passed out. (Doc. 47, ¶¶ 44; Doc. 49-1, Deposition of Kelly Madison, Pp. 26-27, 52-53, 137, 177-78; *see also* Doc. 49-8, Deposition of Rod Madison, Pp. 61-62.) Thus, it is reasonable to conclude that the defendant was mistaken in his representation as to how the purse he claimed lost came to be in his house at the time of the fire.

Insofar as the text messages are concerned, the vast majority of which the plaintiff did not have at the time it denied the defendant's claim and sued him for fraud, the defendant understands that the plaintiff may have had suspicions about the defendant's claim that the purse he claimed lost in the fire was "returned" to him by his ex-fiancé when the relationship ended. However, those suspicions are irrelevant as to whether the defendant actually lost a purse in the fire. Again, this evidence may show that the defendant may have innocently or intentionally misrepresented how the purse he claimed lost came to be in his house at the time of the fire, but not that he misrepresented, let alone willfully, the loss of a purse. Moreover, the text messages occurred at a time when the defendant and Ms. Madison ended their relationship badly; the defendant was often times under the influence of alcohol, and he reasonably believed that Ms. Madison was lying to the plaintiff by stating that she was certain that the defendant did not lose a purse and/or a set of diamond earrings in the fire. (Doc. 47, ¶ 53; Doc. 48-1, ¶ 26.) Thus, it is reasonable to conclude that the defendant was deeply troubled at the thought that his million dollar claim was in jeopardy over the lies of a bitter ex-fiancé.

The plaintiff has cited to no case to support its contention that Pennsylvania insurance companies act reasonably in denying claims and suing insureds for fraud based upon suspicions.

For an insurance company to have a reasonable basis to deny an insured's claim and sue him for fraud on the basis that he knowingly misrepresented the loss of a purse, it must have evidence to support that contention.

### 2. The Earrings.

Anyone who reads the defendant's examination under oath will find that the defendant *only* represented that he lost a set of diamond earrings in the fire. (Doc. 48-5, Pp. 189-98; *see also* Doc 51-5, CL 1918.) The defendant never testified that he gave the earrings he claimed lost in the fire to Kelly Madison, or, that she returned the earrings he claimed lost in the fire to him. (*See* Doc. 48-1, ¶ 39.) Moreover, Mr. Mathena testified that it was "inferred" that the plaintiff gave the earrings to Ms. Madison, and they too, like the purse, were returned to him after the relationship ended.

[Q.] Is there any information or any testimony from Mr. Felix to suggest that the earrings, the diamond earrings he lost in the fire were given to Ms. Madison at one point in time?
[A.] **No, the -- Mr. Felix did not testify that he -- that he actually took the earrings back. However, we now know it's clear they were not destroyed or lost in the fire as he claims.**
[Q.] And -- and what's the basis for that?  What was the -- I see that you read from Mr. Hudock's conclusion where he said, "Although the insured did not testify that he took back the earrings, it is clear that they were not destroyed or lost in the fire as he claims." (Doc. 51-5, CL 1918.) First of all did I read that right?
[A.] **I believe you did.**
[Q.] So how is it clear that Mr. Felix did not lose a set of diamond earrings in the fire?
[A.] **I believe because it's implied that the earrings -- that the 1.5 total weight diamond earrings were a gift for Kelly and those were in her possession.**
[Q.] Implications, is that, to your knowledge, evidence of a willful material misrepresentation?
[A.] **I'm sorry, say that again?**
[Q.] Yeah, I mean, something that somebody may imply, is that evidence of a willful material misrepresentation?
[A.] **I mean based on what we knew at the time that was the decision that was -- that was made.  He didn't testify that there was, in fact, a second set of earrings, either.**
[Q.] Do you know if he was asked that?
[A.] **I don't know if he was or he wasn't.**
[Q.] Would that have been important information -- would that have been important information for you to acquire before denying Mr. Felix's claim?
[A.] **Potentially, but there was only a question as to one set of earrings.**

[Q.] Well, you -- the claim had a value of over a million dollars, and the estimated value of these two items, the purse and earrings -- would you agree with me that the estimated value is in the ballpark of $3500?
[A.] **Roughly that.**
[Q.] Yeah.  So there's -- there's no testimony that Mr. Felix willfully misrepresented that the earrings he claimed to have lost in the fire were returned to him by Ms. Madison, true?
[A.] **That would be correct.**

(Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 127-29.)

There is absolutely no logic to Hudock's statement, "Although the insured did not testify that he took back the earrings, it is clear that they were not destroyed in the fire as he claims." (Doc. 51-5, CL 1918.) It is mind boggling as to how Hudock and the plaintiff reached that conclusion. Again, Ms. Madison actually told the plaintiff and its attorney that she did not have specific information on the contents of the defendant's home. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 141-43; Doc. 51-2, P. 11-12.) All of this information was known to the plaintiff at the time it denied the plaintiff's claim. Consequently, the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a set of earrings.

Moreover, had the plaintiff continued its investigation, as any reasonable insurer would have under the circumstances, the plaintiff would have determined that the defendant was absolutely certain he lost a set of diamond *hoop* earrings in the fire. (Doc. 48-1, ¶¶ 12, 14, 19, 37, 39.) Ms. Madison is in possession of a set of diamond *stud* earrings. (Doc. 49-2.) Ms. Madison has no idea whether the defendant lost a set of diamond earrings in the fire. (Doc 47, ¶ 48; Doc. 49-1, Deposition of Kelly Madison, Pp. 59-60.) Ms. Madison admits that she temporarily lost the set of diamond stud earrings, and had no idea whether the defendant purchased a second set of earrings for her. (*Id*.) A set of diamond hoop earrings were observed to be in the defendant's house by the defendant's friend, Jessica Bloom, and his sister, Becky Shirk, in the months leading up to the fire.

21

(Doc. 47, ¶ 51; Doc. 49-9, Deposition of Jessica Bloom, Pp. 89-92; Doc. 49-10, Deposition of Becky Shirk, Pp. 65-67.) Thus, there is absolutely no evidence to show that the defendant misrepresented the loss of a set of diamond earrings in the January 23, 2016 fire.   Consequently, the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a diamond earrings.

There is no dispute that the plaintiff had suspicions about the veracity of the defendant's representations. Suspicions of fraud are a far cry from having evidence of fraud, let alone clear and convincing evidence, which the plaintiff had none. Per the plaintiff's SIU representative, Kip Mathena, the plaintiff is not permitted to deny claims and force insureds to hire lawyers based upon suspicion or speculation of fraud.

   [Q.] Well, you would agree with me that, you know, you could have a reasonable suspicion of a willful material misrepresentation, couldn't you?
   [A.] **Yeah.**
   [Q.] Would that be enough to deny a claim?
   [A.] **No.**

(Doc. 48-3, Exhibit C, Deposition of Kip Mathena, P. 51)

   [Q.] Would you agree that American National may not deny a claim based upon insufficient information?
   [A.] **Are you asking if we can deny a claim based on whether or not information is speculative?**
   [Q.] Yeah.
   [A.] **No, we don't -- we wouldn't decline a claim based on speculative information.**
   [Q.] Would you deny a claim on biased information?
   [A.] **No.**

 (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, P. 94.)

Clearly, based upon its suspicions, the plaintiff had a reasonable to continue its investigation until such time it had a reasonable basis to deny the claim or cover the loss, which is

discussed more fully in the paragraphs below; however, the plaintiff, without reasonable justification, elected to deny the defendant's claims and sue him for fraud.

The plaintiff's denial of the defendant's claim was based *solely* on the defendant's willful misrepresentation of a lost purse and a set of earrings in the January 23, 2016 fire. Therefore, because the defendant can show by clear and convincing evidence that the plaintiff knowingly or recklessly disregarded its lack of evidence to support its claim that the defendant willfully misrepresented the loss of a purse and a set of earrings; and, that the plaintiff knowingly or recklessly disregarded its lack of a reasonable basis to deny the defendant's claims and sue him for fraud, there are genuine issues of fact for the jury to consider, and the plaintiff's motion for partial summary judgment should be denied as a matter of law.

### D. THE PLAINTIFF KNOWINGLY OR RECKLESSLY DISREGARDED THAT IT HAD NO REASONABLE JUSTIFICATION TO TERMINATE ITS INVESTIGATION, DENY THE DEFENDANT'S CLAIM AND SUE THE UNREPRESENTED DEFENDANT FOR FRAUD.

There is very little room for debate that the plaintiff's investigation into whether the defendant willfully misrepresented his loss of a purse and a set of earrings was incomplete and sloppy. The plaintiff actually sued the defendant for fraud without knowing the color of the purse or the type of earrings the defendant was claiming lost in the fire. Indeed, at no time during the claims handling process *or* during the litigation did the plaintiff ask the defendant to describe the color of the purse or the type of earrings he claimed lost in the fire. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 133-36, 145-46.) It actually took the defendant to prepare an Affidavit for purposes of summary judgment to disclose this information. (Doc. 48-1, ¶¶ 11-14.) Moreover, during the claims process, the plaintiff did not question the amount paid or the method of payment concerning the purse or earrings the defendant claimed lost in the fire. (Doc. 48-1, ¶¶ 40-41.) The plaintiff never asked the defendant during the claims process whether he had

purchased two purses or two sets of earrings for Kelly Madison. (*Id*. at ¶ 37.)[6] Moreover, the plaintiff did not meet with Kelly Madison in person or obtain a sworn statement from her. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 141-42; 149-51; Doc. 49-1, Deposition of Kelly Madison, Pp. 65-66.) During the claims process, the defendant provided the plaintiff with the contact information for Jessica Bloom, but the plaintiff never contacted her. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 151-53.) Had the plaintiff contacted Jessica Bloom the plaintiff would have learned that she observed a white purse and a set of diamond hoop earrings in the defendant's home in the months leading up to the fire. (Doc. 47, ¶¶ 50-51; Doc. 48-1, ¶ 43.) Finally, the plaintiff did not even *consider* before it sued the defendant, who had been cooperative and compliant throughout the entire investigation, whether the defendant was simply mistaken in his belief that the purse he claimed lost in the fire was returned to him after the relationship had ended. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 132, 134-36, 156; *see also* Doc. 48-1, ¶¶ 4-8, 42, 44.)

The defendant appreciates Pennsylvania law that the plaintiff is not required to have a flawless investigation, or even reach the right conclusion. Indeed, the defendant excuses the plaintiff's inadequate investigation, which led to an incorrect result; however, he cannot, and this Honorable Court should not excuse the plaintiff's "shock and awe" legal tactics in blindsiding the unrepresented defendant with an unsubstantiated fraud claim without giving him an opportunity to be heard on the facts supporting the denial of coverage.

To illustrate this point further, the plaintiff admits that the red flags identified during its investigation did not provide a reasonable basis to deny the defendant's claims on the basis of

---

[6] The plaintiff unnecessarily and inappropriately offers its opinions of the credibility of the defendant's statements to this effect, which only underscores the defendant's contention that there are genuine material issues of fact for the jury to consider; therefore, the plaintiff's motion for summary judgment should be denied. (See Doc. 53, P. 23.)

arson, but did provide the plaintiff with a reasonable basis to continue its investigation into the defendant's loss of personal property claim – the defendant agrees. (Doc. 53, P. 22.) Similar to the plaintiff's arson investigation's "red flags", the plaintiff developed red flags or suspicions that the defendant may have intentionally misrepresented the loss of a purse and a set of earrings. However, instead of continuing its investigation, which would have been reasonable under the circumstances, if nothing more than to provide the defendant with an opportunity to be heard on the information it received from Kelly Madison, the corporate plaintiff's experienced SIU and insurance litigation counsel, equipped with only suspicion of a willful misrepresentation, terminated its investigation, denied the defendant's claims and raced to the courthouse with an unsubstantiated fraud claim forcing the cooperative defendant to retain counsel.

Mr. Mathena testified that plaintiff had no reason why it chose not to share the information it received from Ms. Madison with the defendant. (Doc. 48-3, Exhibit C, Deposition of Kip Mathena, Pp. 150-51.) Despite the fact that the defendant had been cooperative and compliant throughout the entire claims process, the plaintiff's "game plan" was to deny the claim and sue the defendant for fraud. (*Id*. at Pp. 131-32, 200-01.) Even the director of the plaintiff's SIU agreed that the plaintiff was obligated to give the defendant a chance to be heard on the facts supporting the basis of the decision of the claim.  (*See* Exhibit A, Deposition of Matt Berry, P. 34, attached to Appendix to Defendant/Counterclaim Plaintiff's Responsive Concise Statement in Support of Defendant/Counterclaim Plaintiff's Opposition to Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment.)

Based upon the facts, it can be reasonably inferred that the plaintiff who had been represented by legal counsel for months, intentionally and methodically implemented a strategic plan to strike the unrepresented and unassuming defendant with an unsubstantiated fraud claim in

the United States District Court for the Western District of Pennsylvania to unfairly increase its chances of securing a favorable judgment. Irrespective of whether the plaintiff had a reasonable basis to deny the defendant's claim and sue him for fraud, it had no reasonable basis to do so without giving the defendant an opportunity to be heard on the facts supporting the fraud claim. Accordingly, there is a genuine issue of material fact as to whether the plaintiff acted in good faith in denying the defendant's claim and suing him for fraud; therefore, the court should deny the plaintiff's motion for partial summary judgment as a matter of law.

### E. THE DEFENDANT CAN PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE PLAINTIFF KNEW OR RECKLESSLY DISREGARDED A LACK OF REASONABLE BASIS TO DENY THE DEFENDANT'S CLAIM AND SUE HIM FOR FRAUD.

Neither the "red flags" nor the defendant's financial information support a reasonable basis to deny the defendant's claim; nor was this information material to the plaintiff's decision to deny the defendant's claim and sue him for fraud; therefore, this information is irrelevant and not admissible at trial. The plaintiff's "advice" of counsel defense is frivolous. The plaintiff's attorney did not misinterpret the law or the Policy provisions, instead, just like the plaintiff, he knowingly or recklessly disregarded that he had no evidence of a willful misrepresentation to support a fraud claim, and participated in the scheme to surprise the unrepresented defendant with a law suit.

The defendant is not critical of the plaintiff for performing a sloppy investigation into the defendant's personal property claim. The defendant admits that the plaintiff had reasonable suspicions that created a reasonable basis to continue its investigation of the defendant's personal property claim. However, suspicions of fraud do not provide the plaintiff with a reasonable basis to deny the defendant's claim and sue him for fraud. Hence, the plaintiff will demonstrate, by evidence that is so clear, direct, weighty and convincing as to enable the jury to reach a clear conviction, without hesitation, that the plaintiff knew it had no reasonable basis to deny the

defendant's claim having an estimated value in excess of one million ($1,000,000.00) dollars, over a suspicion of a willful misrepresentation of the loss of a purse and a set of earrings, having a combined estimated worth of four thousand ($4,000.00), particularly without allowing him an opportunity to be heard on the facts establishing the basis for the plaintiff's coverage decision, and surreptitiously rushing to the courthouse with an unsubstantiated fraud claim against an unrepresented defendant in an effort to unfairly increase its chances of an unjust verdict.

## IV.    Conclusion

There are genuine issues of material fact for the jury to consider in determining whether there is clear and convincing evidence to show that the plaintiff knowingly or recklessly disregarded its lack of a reasonable basis to deny the defendant's claims and sue him for fraud. Therefore, the plaintiff's motion for partial summary judgment should be denied as a matter of law.

Respectfully submitted,

DANIEL J. FELIX,
Defendant/Counterclaim Plaintiff,

*s/ Tyler J. Smith, Esq.*
CHRISTOPHER J. REGAN (PA ID #88771)
TYLER J. SMITH PA (ID #70492)
BORDAS & BORDAS, PLLC
One Gateway Center, 18th Floor
420 Fort Duquesne Blvd.
Pittsburgh, PA 15222
T: 412-502-5000
F: 412-709-6343
tsmith@bordaslaw.com

***Counsel for Defendant/
Counterclaim Plaintiff***

## **CERTIFICATE OF SERVICE**

I certify that on March 14, 2018, I served a true and correct copy of the foregoing upon all counsel of record via CM/ECF.

/s Tyler J. Smith
Tyler J. Smith, Esquire