IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN NATIONAL PROPERTY** ) | **Case No. 3:16-cv-147** |
| **AND CASUALTY COMPANY,** ) | |
| ) | **JUDGE KIM R. GIBSON** |
| **Plaintiff and Third-Party Defendant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DANIEL J. FELIX,** ) | |
| ) | |
| ) | |
| **Defendant and Third-Party Plaintiff.** ) | |

## MEMORANDUM OPINION

### I.     Introduction

Pending before the Court are (1) the Motion for Summary Judgment filed by Defendant/Counterclaim-Plaintiff Daniel Felix on his breach of contract claim and Plaintiff's Complaint in Declaratory Judgment (ECF No. 45) and (2) the Motion for Partial Summary Judgment as to All Claims of Bad Faith filed by Plaintiff/Counterclaim-Defendant American National Property and Casualty Company ("American National") (ECF No. 50). The Motions are fully briefed (*see* ECF Nos. 46, 47, 52, 53, 56, 57, 58, 59, 68, 71) and are ripe for disposition.

For the reasons that follow, the Court will **DENY** Felix's Motion for Summary Judgment and will **GRANT** American National's Motion for Summary Judgment as to All Claims of Bad Faith.

### II.     Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28

U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III. Background

### A. Factual and Procedural History

This case arises from American National's denial of Felix's claim under his American National homeowner's insurance policy ("Policy") after a fire ravaged his home. The following facts are undisputed unless otherwise noted.

#### 1. The Fire and American National's Ensuing Investigation

A fire destroyed Felix's house on January 23, 2016. (ECF No. 47 at ¶ 4; ECF No. 57 at ¶ 4.)

Felix's Policy covered his house. (ECF No. 47 at ¶ 2; ECF No. 57 at ¶ 2.) Felix's Policy contained a

"Fraud" provision, providing:

Section I and Section II – Conditions

   . . .

2. Concealment or Fraud. This entire policy shall be void if, whether before or after any loss, any insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of any insured therein, or in case of any fraud or false swearing by any insured relating thereto.

(ECF No. 47 at ¶ 3; ECF No. 57 at ¶ 3.)

On January 24, 2016, Felix submitted a claim under his Policy for losses exceeding $1,000,000. (ECF No. 47 at ¶ 5; ECF No. 57 at ¶ 5.)

After American National received Felix's claim, it assigned his case to the Special Investigations Unit ("SIU") because it identified several "red flags" that suggested fraud, namely the fact that Felix's previous home had burned down less than three years earlier under similar

circumstances, resulting in Felix filing an insurance claim with American National and receiving a payment of over $400,000.00. (ECF No. 52 at ¶¶ 27, 46, 49; ECF No. 54 at ¶¶ 27, 46, 49.) The SIU assigned Kip Mathena, a SIU investigator, to Felix's claim. (ECF No. 52 at ¶ 48; ECF No. 54 at ¶ 48.) Mathena hired Joseph Hudock, an attorney, to represent American National in connection with Felix's claim. (ECF No. 52 at ¶ 50; ECF No. 54 at ¶ 50.)

Felix submitted a Proof of Loss to American National on March 10, 2016. (ECF No. 51-3 at 32.) Felix claimed a total of $744,000.00 in dwelling replacement costs, $60,000.00 in loss of use costs, and $270,000.00 in loss of contents costs.[1] (*Id.*) As part of his Proof of Loss, Felix provided an itemized list of hundreds of personal items he lost in the blaze. (*See id.* at 34-54.)

Two items are of particular importance to the current dispute: a set of 1.5 carat diamond earrings and a Louis Vuitton purse. (ECF No. 52 at ¶ 63(a)-(b); ECF No. 54 at ¶ 63(a)(b).) On his Proof of Loss form, Felix stated that he purchased the lost earrings from Littman Jewelers for $1,906.94, that he used a credit card to purchase the earrings, and that he had a receipt from the purchase. (ECF No. 51-3 at 40.) Felix stated that he purchased the lost purse from a Louis Vuitton store for $1,358, that he used a credit card to purchase the purse, but that he did not have a receipt. (*Id.* at 53.) Felix attested that the information provided in his Proof of Loss forms was true under the pains and penalties of perjury. (*Id.* at 34-54.)

On March 30, 2016, Hudock conducted a Statement Under Oath ("SUO") of Felix, as permitted by Felix's Policy. (ECF No. 52 at ¶¶ 60, 66; ECF No. 54 at ¶¶ 60, 66.) During the SUO,

---

[1] It is undisputed that between 2012 and January of 2016, Felix spent approximately $900,000.00 and that roughly $300,000.00 of this sum involved cash or cash withdrawals. (ECF No. 47 at ¶ 40; ECF No. 57 at ¶ 40.)

Felix confirmed that the fire destroyed a Louis Vuitton purse; Felix stated that he purchased the Louis Vuitton purse for Kelly Madison, his ex-fiancée, but that she had returned it to Felix after their relationship ended. (ECF No. 52 at ¶ 68; ECF No. 54 at ¶ 68.) Felix also confirmed that he lost a set of 1.5 carat earrings in the fire.[2] (ECF No. 52 at ¶ 63(a); ECF No. 54 at ¶ 63(a).)

On the same day that Felix gave his SUO, Mathena—the SIU investigator—spoke with Ms. Madison. (ECF No. 52 at ¶ 70; ECF No. 54 at ¶ 70.) Mathena spoke with Ms. Madison again on April 18, 2016. (ECF No. 52 at ¶ 75; ECF No. 54 at ¶ 75.) And on May 20, 2016, Hudock interviewed Ms. Madison, who stated that she was reluctant to provide a sworn statement. (ECF No. 52 at ¶ 76; ECF No. 54 at ¶ 76.)

Hudock conducted a second SUO of Felix on May 23, 2016. (ECF No. 52 at ¶ 78; ECF No. 54 at ¶ 78.) Felix "confirmed that the sworn testimony that he provided" during his first SUO was true. (ECF No. 52 at ¶ 79; ECF No. 54 at ¶ 79.)

On May 31, 2016, Hudock spoke with Madison, who reported that she was in possession of a Louis Vuitton purse and a set of diamond earrings that Felix had given to her. (ECF No. 51-2 at 11.) In light of the information provided by Ms. Madison, American National asked Hudock to consult Pennsylvania law to explore American Nationals' legal options. (ECF No. 52 at ¶ 82; ECF No. 54 at ¶ 82.) The same day, Ms. Madison forwarded American National pictures of a brown Louis Vuitton purse and a pair of diamond stud earrings. (ECF No. 52 at ¶ 83; ECF No. 54 at ¶ 83 and ECF No. 47 at ¶ 17; ECF No. 57 at ¶ 17.)

---

[2] Unlike the purse, Felix did not state that he gave the earrings to Ms. Madison nor that she returned them to him prior to the fire. (ECF No. 47 at ¶ 14; ECF No. 57 at ¶ 14.)

On June 2, 2016, Ms. Madison informed Mathena that she had text messages in which Felix inquired about the Louis Vuitton purse. (ECF No. 52 at ¶ 88; ECF No. 54 at ¶ 85.) Ms. Madison provided these text messages to American National on June 8, 2016. (ECF No. 51-5 at 36-49.) In these text messages, sent in May and June of 2016, Felix repeatedly questions Ms. Madison about the whereabouts of the Louis Vuitton purse and pressures her to send him a photograph of the purse. (*Id.*)

On June 10, 2016, Hudock sent his coverage opinion to Mathena. (ECF No. 52 at ¶ 115; ECF No. 54 at ¶ 115.) Hudock stated that, in his opinion, Felix's "statements to the effect that the purse was destroyed in the fire were made with an intent to deceive and are material . . . ." (ECF No. 51-5, at 55.) Hudock also asserted that "[a]lthough [Felix] did not testify that he took back the earrings, it is clear that they were not destroyed or lost in the fire as he claims." (*Id.*) Hudock concluded that these material misrepresentations entitled American National to "deny [Felix's entire claim" because Pennsylvania follows the "majority view that a single fraudulent material misrepresentation can void the entire policy . . . ." (*Id.*)

On June 14 and June 16, 2016, American National held Claims Committee meetings regarding Felix's claim. (ECF No. 52 at ¶ 120; ECF No. 54 at ¶ 120.) Hudock attended parts of these meetings by phone and provided his legal opinion that Pennsylvania law permitted American National to void the entire Policy due to his material misrepresentations. (ECF No. 52 at ¶ 121; ECF No. 54 at ¶ 121.) After hearing from Hudock and reviewing the information gathered during the investigation, American National decided to deny Felix's claim and file a lawsuit against Felix for a declaratory judgment that American National was not required to

provide coverage to Felix based on his alleged material misrepresentations. (ECF No. 52 at ¶ 122; ECF No. 54 at ¶ 122.)

On June 23, 2016, American National sent Felix a denial letter that explained that American National denied his claim because of material misrepresentations in his presentation of his claim. (ECF No. 52 at ¶ 125; ECF No. 54 at ¶ 125.)

### 2. The Litigation and Discovery

On June 24, 2016, American National filed its Complaint in this Court. (ECF No. 1.) American National's Complaint contains two counts: (1) a claim for declaratory judgment that Felix's Policy is void because of his material misrepresentations and (2) a claim against Felix for civil insurance fraud. (*See id.*) Felix responded by filing an Answer and counterclaims against American National for (1) breach of contract and (2) statutory bad faith. (ECF No. 6.)

Several individuals were disposed during discovery, including Felix, Ms. Mason, Jessica Bloom (Felix's friend) and Becky Shirk (Felix's sister). (ECF No. 52 at ¶ 139; ECF No. 54 at ¶ 139.)

During his deposition, Felix testified that, prior to the blaze, he possessed not one, but *two* sets of purses and earrings: one set in Ms. Madison's possession—which the fire did not destroy— and one set in Felix's house—which were lost in the fire. (ECF No. 52 at ¶ 141; ECF No. 54 at ¶ 141.)

Felix stated that he purchased the Louis Vuitton purse in Ms. Madison's possession for approximately $1,700 in December, 2014. (ECF No. 47 at ¶ 39.) Felix explained that he purchased the second Louis Vuitton purse—the one lost in the fire and referenced in the Proof of Loss— from a woman outside a Sheetz in Greensburg for $1,358.00 in cash in February, 2015. (ECF No.

49-7 at 55.) Felix stated that he mistakenly included a credit card payment of $1,358.00 for a Louis Vuitton purse in his Proof of Loss because he confused which purse he paid for with a credit card. (*Id.*)

Turning to the earrings, Felix explained that when he prepared his Proof of Loss, he may have mistakenly submitted the receipt for the earrings that Ms. Madison still had in her possession, rather than the earrings that were lost in the fire. (ECF No. 51-6 at 15-16.) Felix stated that he obtained the second set of earrings from a "goldsmith" on Scalp Avenue in Johnstown, but he could not name the "goldsmith" or provide a receipt. (ECF No. 52 at ¶ 143; ECF No. 54 at ¶ 143.) Felix asserted that he had purchased the second set of earrings after Ms. Madison lost the first set but never presented the second set to her because Ms. Madison recovered the first set. (ECF No. 49-7 at 41.)

In her deposition, Ms. Madison testified that Felix never gave her a second Louis Vuitton purse, and stated that she had no knowledge about whether Felix ever purchased a second pair of earrings for her. (ECF No. 52 at ¶ 147; ECF No. 54 at ¶ 1 147.) Ms. Madison also stated that she had no knowledge about whether Felix actually lost a Louis Vuitton purse and diamond earrings in the fire. (ECF No. 47 at ¶ 49; ECF No. 57 at ¶ 49.)

In their depositions, Ms. Bloom and Ms. Shirk both testified that they saw a white Louis Vuitton purse and a set of diamond hoop earrings in Felix's home shortly before the fire. (ECF No. 45 at ¶¶ 58, 59; ECF No. 58 at ¶¶ 58, 59.)

On January 26, 2018, Felix filed an affidavit in which he elaborated on his deposition testimony and stated that he purchased one *brown* and one *white* Louis Vuitton purse for Ms.

7

Madison during the course of their relationship. (ECF No. 48-1 at ¶ 19.) Felix explained that, on his Proof of Loss and in previous sworn testimony, he did not claim the loss of a *brown* Louis Vuitton purse but rather a *white* Louis Vuitton purse.[3] (*Id.* at ¶¶ 11, 13.) Felix also asserted that, in February 2015, Ms. Madison and Felix had an intense argument over a prenuptial agreement; Felix was intoxicated and Ms. Madison "passed out, hit her head and lost consciousness." (*Id.* at ¶ 22.) Felix stated that he "reasonably believed" that he had presented the white Louis Vuitton purse to Ms. Madison during this encounter, and that she had returned it to him.[4] (*Id.* at ¶ 24.) However, Felix acknowledged that because of his intoxication and the large volume of purchases he made for Ms. Madison during their relationship, he may have mistakenly stated during his prior testimony that Ms. Madison returned the white Louis Vuitton purse when, in fact, he may have never presented it to her in the first place. (*Id.*) Felix further stated that "[a]t the time I prepared the [P]roof of [L]oss, I may have mixed up the purchase price and/or the method of payment for the white Louis Vuitton purse with the brown Louis Vuitton purse I purchased for Ms. Madison." (*Id.* at ¶ 30.)

In the affidavit, Felix further stated that he purchased two sets of diamond earrings for Ms. Madison—one *studs*, one *hoops*. (*Id.* at ¶ 20.) Felix clarified that the diamond earrings lost in

---

[3] The Court notes that Felix's Proof of Loss form does not specify the color of the Louis Vuitton purse he claimed was lost in the fire. (*See* ECF No. 51-3 at 53.) Furthermore, it does not appear that Felix specified the color of the purses until his January 2018 affidavit.

[4] Felix does not state when he believed that Ms. Madison returned the white Louis Vuitton purse.

the fire were hoops—not studs. (*Id.* at ¶ 12.) Felix further stated that he never claims that he lost diamond stud earrings in the fire.[5] (*Id.* ¶ 14.)

### 3. The Pending Motions for Summary Judgment

On February 14, 2018, Felix moved for summary judgment on his breach of contract claim and against American National on its "Complaint for Declaratory Judgment." (ECF No. 45.) American National, in turn, filed a Motion for Partial Summary Judgment on Felix's bad faith claim.[6] (ECF No. 50.)

### IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters*

---

[5] The Court notes that Felix's Proof of Loss form does not specify whether the earrings lost in the fire were studs or hoops. (*See* ECF No. 51-3 at 40.) Furthermore, it does not appear that Felix specified the design of the different pairs of earrings until his January 2018 affidavit.

[6] American National did not move for summary judgment on either of its claims.

9

*v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V. Discussion

### A. The Court Will Grant Summary Judgment for American National on Felix's Bad Faith Claim

#### 1. Relevant Law

Pennsylvania's bad faith statute provides that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.[7]

---

[7] As this Court has previously noted, "Section 8371 encompasses a broad range of insurer conduct." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (Gibson, J.) Although Section 8371 does not define the term "bad faith," "courts have subsequently determined that a variety of carrier actions can constitute bad faith, including 'a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.'" *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)). "Bad faith also occurs when an insurance company makes an 'inadequate investigation or fails to perform adequate legal research concerning a coverage issue.'" *Smith*, 904 F. Supp. 2d at 524 (quoting *Corch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Cnty. Ct. 2003)). However, Felix appears to concede several potential avenues for his bad faith claim. For instance, Felix states that he "is not critical of the plaintiff's decision to refer the defendant's claims to its SIU, nor is he challenging the SIU department's competency." (ECF No. 56 at 2.) Felix further states that he does not challenge the length of time it took American National to complete its investigation into Felix's claim (*id.*), nor American National's decision to refer his claim to Attorney Hudock, the outside counsel. (*Id.*) Furthermore, Felix admits that Hudock "is competent and qualified" and that he "correctly interpreted Pennsylvania law, which allows an insurer to void the Policy if the insured willfully misrepresents a material fact." (*Id.* at 13.) In fact, Felix explicitly states that he is "not claiming bad faith" based on American National's investigation whatsoever. (*Id.*) Instead, Felix asserts bad faith based on (1) American National's "baseless denial of the defendant's claim" and (2) American National's "unjust tactics in surprising the unwitting defendant with a frivolous fraud claim." (*Id.* at 2.)

To succeed on a statutory bad faith claim, "the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)); *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 182 (3d Cir. 2013) (quoting *Babayan*); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa. Super. 108, 125 (1994); *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 630 (W.D. Pa. 2014) (Gibson, J.); *Hayden v. Westfield Ins. Co.*, No. CIV.A. 12-0390, 2013 WL 5781121, at *10 (W.D. Pa. Oct. 25, 2013) (Hornak, J.); *Lewis v. Atl. States Ins. Co.*, No. 2:08-CV-01040-LPL, 2014 WL 12595309, at *7 (W.D. Pa. Sept. 26, 2014) (Lenihan, M.J.)

As Judge Hornak stated, "[t]he first prong of the *Babayan* test is objective, 'so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot' as a matter of law be bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, No. 05–6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007); *see Rowe*, 6 F. Supp. 3d at 630 (citing *Leach v. Nw. Mut. Ins. Co.*, No. 01–cv–2364, 2005 WL 3533116, at *11 (W.D. Pa. Dec. 22, 2005)) (holding that "[t]o defeat a claim of bad faith, an insurer must only demonstrate that it had a reasonable basis for its decision."); *Hayden*, 2013 WL 5781121, at *10 (W.D. Pa. Oct. 25, 2013) (quoting *Arnica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011)) (holding that "an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions.")

The second prong requires demonstrating that the "insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim."[8] *Rancosky v. Washington Nat. Ins. Co.*, 2015 PA Super 264, 130 A.3d 79, 93 (2015) (citing *Greene v. United Servs. Auto. Ass'n*, 2007 PA Super 344, ¶ 19, 936 A.2d 1178, 1191 (2007)). "Indeed, 'the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits.'" *Hayden*, 2013 WL 5781121, at *10 (quoting *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).

"The insured is required to meet its burden of proving 'bad faith' by clear and convincing evidence." *Babayan*, 430 F.3d at 137 (citing *Terletsky*, 649 A.2d at 688); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 13-284, 2015 WL 539550, at *9 (E.D. Pa. Feb. 10, 2015). To satisfy this standard, "the plaintiff [must] show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)). Accordingly, "the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *Pilosi*, 393 F.3d at 367); *Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-00024, 2012 WL 5508371, at *6 (E.D. Pa. Nov. 13, 2012).

---

[8] As Courts in the Third Circuit have repeatedly held, "mere negligence or bad judgment is not bad faith." *Babayan*, 430 F.3d at 137 (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (2004)); *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (Gibson, J.) (same); *see Lewis*, 2014 WL 12595309, at *7 (internal citations omitted) ("Merely negligent conduct, however harmful to the interests of the insured, is recognized by Pennsylvania courts to be categorically below the threshold required for a showing of bad faith."); *Klinger v. State Farm Mut. Auto. Ins. Co.*, 895 F. Supp. 709, 714 (M.D. Pa. 1995) ("negligence, even gross negligence, cannot support a finding of bad faith.")

## 2. Analysis

The Court will grant summary judgment in favor of American National on Felix's bad faith claim. As explained below, the Court finds that no reasonable jury could conclude that American National failed to conduct a reasonable investigation or lacked a reasonable basis for its decision to deny Felix's claim. Alternatively, the Court finds that no reasonable jury could conclude that American National knew of or recklessly disregarded its lack of a reasonable basis for denying Felix's claim. Because the Court determines that Felix cannot prevail, as a matter of law, on either *Babayan* prong, the Court must grant summary judgment in favor of American National on Felix's bad faith claim.

### a. No Reasonable Jury Could Find that American National Failed to Conduct a Reasonable Investigation or Lacked a Reasonable Basis for Its Decision to Deny Felix's Claim (*Babayan* Prong I)

The Court finds that no reasonable jury could conclude that American National failed to conduct a reasonable investigation or lacked a reasonable basis for its decision to deny Felix's claim. Both parties agree that Felix's Policy contains a fraud provision which allows American National to deny Felix's claim and void his Policy if he "willfully concealed or misrepresented any material fact" in connection with his claim. Furthermore, both parties acknowledge that Felix submitted a Proof of Loss indicating that he lost a Louis Vuitton purse and a set of diamond earrings in the fire. It is also undisputed that, prior to denying Felix's claim, American National interviewed Felix under oath on two occasions and that, in these interviews, Felix affirmed that the information provided in his Proof of Loss was accurate.

14

Felix does not contest that during its investigation, American National contacted Ms. Madison, who stated that she still possessed a Louis Vuitton purse and a set of diamond earrings that Felix gave her. Ms. Madison provided American National with photographs of these items. Upon obtaining this information—which appeared to contradict Felix's representations in the Proof of Loss that the fire destroyed a Louis Vuitton purse that Ms. Madison had returned to him and a pair of diamond earrings—American National referred Felix's case to Hudock for a legal opinion on how to proceed. A few days later, Ms. Madison informed American National that she also had text messages that Felix sent her in May and June, 2016—i.e. *after* American National began its investigation into Felix's claim—in which Felix repeatedly asked her about, and attempted to pressure her into sending him pictures of, the Louis Vuitton purse.

After American National received the text messages, Hudock rendered his coverage opinion; he concluded that Felix had intentionally made material misrepresentations on his Proof of Loss and concluded that American National would be within its rights to deny Felix's claim and void his Policy. After receiving Hudock's coverage opinion, American National's Claims Committee convened two times to discuss Felix's case. Finally, after undertaking the thorough investigation described above, American National denied Felix's claim.

In light of the foregoing, the Court concludes that no reasonable jury could find that American National failed to conduct a reasonable investigation into Felix's claim before issuing its denial. The Court similarly finds that no reasonable jury could conclude that American National lacked a reasonable basis for its decision to deny Felix's claim. Therefore, the Court will grant American National's motion for summary judgment on Felix's bad faith claim.

The Court rejects Felix's argument that American National failed to conduct a reasonable investigation because it failed to determine that Felix lost a *white* (as opposed to a brown) Louis Vuitton purse and diamond *hoop* (as opposed to stud) earrings before it denied his claim. (ECF No. 56 at 17-23.) Felix's Proof of Loss does not specify the color of the Louis Vuitton purse or the type of earrings he lost in the fire. (*See* ECF No. 51-3 at 53, 40.) Under Felix's logic, rather than relying on Felix's own representations in his Proof of Loss, American National needed to confirm with Felix that he only owned *one* of each item he listed in the Proof of Loss to ensure that he did not actually have *two* (or three, or four) items similar to those he claimed on the Proof of Loss, but that were not actually destroyed by the fire. Surely, American National cannot be faulted for failing to inquire about items that it did not know existed. Moreover, Felix would require American National to inquire into details about the items (color of the purse, style of the earrings) that Felix failed to include in the Proof of Loss and never mentioned in his two Statements Under Oath. Imposing this burden on insurers would needlessly increase costs of investigating insurance claims. And if Felix "was absolutely certain" he lost a "*white* purse" and "diamond *hoop* earrings" in the fire—as he now claims[9]—he should have conveyed that information to American National during their investigation into his claim.

The Court also rejects Felix's assertion that American National lacked a reasonable basis for denying his claim. Felix stated on his Proof of Loss that he lost a Louis Vuitton purse and a pair of 1.5 carat diamond earrings. (ECF No. 51-3 at 40, 53.) Felix affirmed on the Proof of Loss

---

[9] *See* ECF No. 56 at 18, 21.

that he accurately listed the items he lost under the pains and penalties of perjury. (*Id.* at 34-54.) Further, prior to making its claims decision, American National twice interviewed Felix under oath; Felix never specified the color of the purse or the design of the earrings. During Felix's first Statement Under Oath, he stated that he gave Ms. Madison the Louis Vuitton purse, that she returned it after they separated, and that the fire destroyed it. (ECF No. 52 at ¶ 68; ECF No. 54 at ¶ 68.) But shortly thereafter, American National discovered that Ms. Madison still had the purse and a set of diamond earrings similar to those Felix claimed in the Proof of Loss. (ECF No. 51-2 at 11.) Based on the information that American National had when it denied Felix's claim, no reasonable jury could find that American National lacked a reasonable basis for its decision.

In sum, Felix failed to satisfy the first prong of the test *Babayan* because no reasonable jury could conclude that American National failed to conduct a reasonable investigation or lacked a reasonable basis for its decision to deny Felix's claim.

> **b. No Reasonable Jury Could Find that American National Knew or Recklessly Disregarded Its Lack of a Reasonable Basis in Denying Felix's Claim (*Babayan* Prong II)**

In the alternative, the Court finds that no reasonable jury could find that American National knew or recklessly disregarded its lack of a reasonable basis in denying Felix's claim. Felix has not presented a scintilla of evidence that American National subjectively appreciated that it lacked a reasonable basis for its claim decision. Rather, Felix makes the unfounded allegation that American National knew it lacked a reasonable basis because (1) American National never asked Felix to describe the color of the purse of the design of the earrings that he claimed on his Proof of Loss (ECF No. 56 at 23); (2) American National did not meet with Ms.

17

Madison in person (*id.* at 24); (3) American National did not obtain a sworn statement from Ms. Madison (*id.*); (4) American National did not contact Ms. Bloom, whose contact information Felix had provided; and (5) American National did not ask Felix whether he "was simply mistaken in his belief that the purse he claimed lost in the fire was returned to him after the relationship had ended." (*Id.*)

The Court rejects these arguments. The Court discussed and dismissed, *supra*, arguments one and five. Regarding arguments two and three, Felix has not presented a single case that supports his contention that American National needed to meet with Ms. Madison in person or obtain a sworn statement from her to reasonably conclude that she possessed items that Felix claimed had been lost in the fire. Finally, regarding Felix's contention about Ms. Bloom, Felix has not presented any evidence that American National knew prior to denying Felix's claim that Ms. Bloom had been in Felix's home shortly before the fire, much less that she had any information about the purse or the earrings.

In sum, the Court concludes that even if American National lacked a reasonable basis for denying Felix's claim—which this Court has already held it did not—American National is still entitled to summary judgment; Felix failed to present a scintilla of evidence to support his unfounded conjecture that American National knew of or recklessly disregarded its lack of a reasonable basis for its claim decision.

18

**B. The Court Will Deny Felix's Motion for Summary Judgment on His Breach of Contract Claim and Against American National's Complaint in Declaratory Judgment**

### 1. American National's Burden of Proof

Felix argues that to prevail on its action for declaratory judgment and defeat Felix's breach of contract claim, American National must prove that Felix violated the fraud provision of his Policy by clear and convincing evidence. (ECF No. 46 at 16-17, *citing* 18 Pa. C.S. § 4117(a)(2).) In response, American National argues that the correct standard is preponderance of the evidence because American National alleges that Felix committed the alleged fraud when he *claimed benefits*, not when he *applied* for the insurance policy in the first place. (ECF No. 59 at 21-24.)

The Court agrees with American National that to prevail on its declaratory judgment action and defeat Felix's breach of contract claim, it must prove that Felix made material misrepresentations by a preponderance of the evidence. Pennsylvania courts have repeatedly held that when an insurance company denies coverage based on alleged "material misrepresentations made in the submission of the claim" it need only prove that the insured made material misrepresentations by a preponderance of the evidence. *See Greenberg v. Aetna Ins. Co.*, 427 Pa. 494 (1967) (reversing and remanding when trial court instructed the jury that insurer who had denied insured's claim due to suspicions of arson needed to prove that the insured submitted a fraudulent claim by clear and convincing evidence, and holding that insurance company need only prove its affirmative defense by a preponderance of the evidence); *Henriquez-Disla*, 2015 WL 1208150, at *3 (holding that the insurance company must prove its affirmative defense that the insured made material misrepresentations in his claim by a preponderance of the evidence); *TJS*

*Brokerage & Co. v. Hartford Cas. Ins. Co.*, No. 2755DEC.TERM1999, 2000 WL 33711084, at *2 (Pa. Com. Pl. July 21, 2000) (citing *Greenberg*) (stating that "the insurer need only prove by a preponderance of evidence that the insured made a fraudulent claim of loss under a[n] insurance contract."); *Ciavarella v. Erie Ins. Exch.*, No. 37 C.D. 2009, 2010 WL 9517596, at *5 (Pa. Commw. Ct. Apr. 28, 2010) (affirming trial court and holding that, under *Greenberg*, an "[i]nsurer had to show by a preponderance of the evidence that [insured] submitted a fraudulent loss claim" to mount a successful affirmative defense of fraud).

Therefore, to prevail on its claim for declaratory judgment and defeat Felix's breach of contract claim based on its defense that Felix submitted a fraudulent claim, American National must prove by a preponderance of the evidence that Felix intentionally made material misrepresentations on his claim.[10]

### 2.    Analysis

Felix argues that American National breached its insurance contract because it denied his claim despite lacking evidence that Felix willfully misrepresented his loss of the purse and the

---

[10] The cases Felix cites are inapposite. For instance, in *Wezorek v. Allstate Ins. Co.*, No. CIV.A.06-CV-1031, 2007 WL 2264096, at *12 (E.D. Pa. Aug. 7, 2007), the district court held that the clear and convincing standard of proof applies when an insurer seeks to "rescind an insurance policy that was procured through fraud." *Id.* at 11. Here, American National does not allege that Felix procured his Policy fraudulently, but rather that he submitted a fraudulent claim, thus voiding the Policy under its own terms. As noted above, the Supreme Court of Pennsylvania held in *Greenberg* that while the clear and convincing standard applies to cases "involving the *validity of the execution* of the instruments sued upon," the preponderance of the evidence standard applies when an insurer denies a claim based on material misrepresentations in the claim. *Greenberg*, 427 Pa. at 497. (emphasis added). Furthermore, *Snell v. Com., State Examining Bd.*, 490 Pa. 277 (1980) involves the burden of proof required to prevail on a claim of insurance fraud, not the standard of proof required to prevail on an affirmative defense. *Id.* at 282. Moreover, *Standefer v. T. S. Dudley Land Co.*, No. 3:09-CV-1115, 2010 WL 11534333 (M.D. Pa. July 14, 2010) does not apply because it deals with an oil and gas lease, not an insurance contract.

20

earrings. (ECF No. 46 at 16-25.) In response, American National contends that the Court should deny Felix's motion for summary judgment because the Court cannot assess Felix's intent at the summary judgment stage and because several genuine issues of material fact preclude the Court from determining, as a matter of law, that Felix did not intend to violate the Policy's fraud provision. (ECF No. 59 at 12-21.)

The Third Circuit has repeatedly stated that district courts should not resolve issues of intent at the summary judgment stage. *See, e.g., Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 523 (3d Cir. 2004) (reversing district court's grant of summary judgment and noting that "[g]enerally an insured's state of mind is an issue of fact for the jury."); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and credibility are rarely suitable for summary judgment."); *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)) ("issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties.").

The Court will deny Felix's motion for summary judgment on his breach of contract claim and on American National's Complaint in Declaratory Judgment. Viewing the evidence in the light most favorable to American National and drawing all reasonable inferences in its favor—as the Court must do at this stage[11]—American National has presented evidence sufficient to allow

---

[11] *See Farrell*, 206 F.3d at 278.

a jury to find that Felix deliberately misrepresented his loss of these items.[12] Furthermore, as noted above, the Third Circuit clearly commands district courts to avoid deciding issues of intent at the summary judgment stage.[13] The finder of fact—not the Court—must assess Felix's credibility and determine whether he intentionally misrepresented his loss of the items in question.

Felix argues that the Court should grant summary judgment in his favor on his breach of contract claim and against American National on its Complaint in Declaratory Judgment because American National failed to present evidence that refutes Felix's contention that he had *two* Louis Vuitton purses and *two* sets of diamond earrings and that he lost one of each in the fire. (ECF No. 46 at 21-24.) The Court rejects Felix's argument. Felix would require American National to prove a negative to survive his summary judgment motion—*that Felix did not actually have two Louis Vuitton purses and two sets of diamond earrings*—despite the fact that, in his Proof of Loss and Statements Under Oath, Felix *never indicated* that he possessed more than one Louis Vuitton purse or one set of diamond earrings.

Furthermore, the summary judgment standard does not require that American National produce evidence that Felix definitively lied on his Proof of Loss. Rather, American National need only present evidence that, when viewed in the light most favorable to American National, would allow a rational jury to conclude that Felix deliberately misrepresented his losses, thus allowing

---

[12] For example, American National offered Ms. Madison's testimony that she still has items that Felix claimed on his Proof of Loss, the pictures of the purse and earrings submitted by Ms. Madison, and the text messages from Felix to Ms. Madison asking about the whereabouts of the purse.
[13] *See, e.g., Justofin*, 372 F.3d at 523.

American Nation to deny his claim and void his contract. American National easily satisfied its burden.[14]

## VII.  Conclusion

In conclusion, the Court finds that no reasonable jury could conclude that American National acted in bad faith by denying Felix's claim and voiding his Policy. Accordingly, the Court will **GRANT** American National's Motion for Partial Summary Judgment as to All Claims of Bad Faith (ECF No. 50). Felix's statutory bad faith claim (Count II) is therefore dismissed, as is his breach of contract claim (Count I) to the extent it asserts a common law bad faith claim.

The Court further finds that American National presented sufficient evidence to allow a jury to conclude that Felix deliberately misrepresented his loss of a purse and earrings, and accordingly will **DENY** Felix's Motion for Summary Judgment (ECF No. 45) on his breach of contract claim and against American National's Complaint in Declaratory Judgment.

A corresponding order follows.

---

[14] The Court observes that courts in the Third Circuit are divided on the burden of proof that applies to statutory claims of insurance fraud based on misrepresentations in a claim application. *Compare Henriquez-Disla*, 2015 WL 1208150, at \*4 (holding that the insurance company's "[i]nsurance [f]raud counterclaim is governed by the clear and convincing evidence standard.") with *Majestic Box Co. v. Reliance Ins. Co. of Ill.*, No. CIV. A. 96-8118, 1998 WL 720463, at \*2 (E.D. Pa. Sept. 2, 1998) (applying the preponderance of the evidence standard). The Court reserves judgment on the burden of proof that will apply at trial to American National's statutory insurance fraud claim (*see* attached ORDER) and finds that, even if the higher "clear and convincing" standard applies, Felix is still not entitled to summary judgment. When viewed in the light most favorable to American National and drawing all reasonable inferences in its favor, American National presented sufficient evidence for a jury to find by clear and convincing evidence that Felix intentionally misrepresented the items on his Proof of Loss. *Farrell*, 206 F.3d at 278. Furthermore, the jury— not the Court—must assess Felix's intent, his credibility, and the credibility of the other witnesses.

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN NATIONAL PROPERTY** ) | **Case No. 3:16-cv-147** |
| **AND CASUALTY COMPANY,** ) | |
| ) | **JUDGE KIM R. GIBSON** |
| **Plaintiff and Third-Party Defendant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DANIEL J. FELIX,** ) | |
| ) | |
| ) | |
| **Defendant and Third-Party Plaintiff.** ) | |

## ORDER

**AND NOW**, this ___11th___ th day of April 2018, upon consideration of (1) the Motion for Summary Judgment filed by Felix (ECF No. 45) and (2) the Motion for Partial Summary Judgment as to All Claims of Bad Faith filed by American National (ECF No. 50), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** as follows:

1. The Court **DENIES** Felix's Motion for Summary Judgment (ECF No. 45).

2. The Court **GRANTS** American National's Motion for Partial Summary Judgment as to All Claims of Bad Faith (ECF No. 50).

3. The following claims remain: American National's claim for declaratory judgment (Count I); American National's claim for civil insurance fraud (Count II); and Felix's counter-claim for breach of contract, to the extent it asserts a breach of contract claim rather than a bad faith claim (Count I of Felix's Answer and Counterclaims).

4. American National's Unopposed Motion for Leave to File Excess Pages in Brief in Support of Motion for Summary Judgment (ECF No. 43) is **DENIED AS MOOT.**

5. The Court observes that discovery is closed, the deadline for filing dispositive motions has passed, and the Court has already held a Post-Discovery Status Conference in this case (*see* ECF No. 40.) Accordingly, the case appears ready for trial.

6. The parties must comply with the Trial Order that follows this Memorandum Opinion.

7. **45 days before trial**, each party must submit a brief containing argument about whether the preponderance of the evidence standard or the higher clear and convincing standard governs American National's statutory civil insurance fraud claim (Count II). **Briefs may not exceed ten (10) pages**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**