IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, ) ) ) | Case No. 3:16-cv-147 |
| ) | JUDGE KIM R. GIBSON |
| Plaintiff and Third-Party Defendant, ) ) | |
| v. ) ) | |
| DANIEL J. FELIX, ) ) | |
| Defendant and Third-Party Plaintiff. ) | |

## MEMORANDUM ORDER

Before the Court are Defendant-Counterclaimant Daniel J. Felix's ("Felix") Motion *in Limine* #9 to Exclude Text Messages Between Daniel J. Felix and Kelly Madison (ECF No. 96), Felix's Motion *in Limine* #10 to Preclude Kelly Madison From Testifying at the Time of Trial that She Thought Daniel J. Felix Wanted Her to Lie (ECF No. 100), and Plaintiff-Counterclaim Defendant American National Property and Casualty Company's ("ANPAC") Motion in Support of the Admissibility of E-Mails and Text Messages Between Daniel Felix and his Ex-Fiancée. (ECF No. 116.) These Motions are fully briefed (*see* ECF Nos. 97, 101, 117, 143, 155) and are ripe for disposition. Because these Motions involve the same witness and evidentiary issues, the Court will rule on them together.

I.   **Background**

This case arises from alleged misrepresentations that the insured, Felix, made when he submitted an insurance claim for property destroyed by a fire at his home, which ANPAC insured. (ECF No. 122 ¶¶ 4-5.). Specifically, ANPAC alleges that Felix fraudulently listed two items of property—a Louis Vuitton purse and a set of diamond earrings—on the Proof of Loss

form that Felix submitted to ANPAC, even though Felix knew these items were not destroyed in the fire. (*Id.* ¶ 5.)

The fire at Felix's house took place on January 23, 2016. (ECF No. 118 ¶ 1.) ANPAC denied Felix's claim because Felix allegedly violated the "Concealment and Fraud" provision in the policy that ANPAC issued to Felix. (*Id.* ¶ 2.) Subsequently, on June 24, 2016, ANPAC filed a Complaint in this Court seeking (1) a declaratory judgment that the policy ANPAC issued to Felix is void and that ANPAC has no duty to indemnify Felix for the fire loss, and (2) damages for civil insurance fraud under 18 Pa. Cons. Stat. § 4117(g). (*See* ECF No. 1.) Felix filed an answer and counterclaims for breach of contract and bad faith.[1] (*See* ECF No. 6.)

The instant Motions involve evidence related to Felix's ex-fiancée, Kelly Madison ("Madison"). Madison and Felix were engaged to be married sometime around the 2016 fire at Felix's home but later called off their engagement. (*See, e.g.,* ECF No. 96 ¶ 10; ECF No. 116 ¶ 16.)

Sometime after the 2016 fire at Felix's home and his subsequent insurance claim, Madison advised ANPAC that she was in possession of a Louis Vuitton purse and diamond earrings that Felix claimed were destroyed in the fire. (ECF No. 127 ¶ 2.) On May 31, 2016, Madison sent ANPAC photos of the Louis Vuitton purse and diamond earrings in her possession. (ECF No. 116 ¶ 7.) ANPAC stated that its decision to deny Felix's fire-loss claim was at least partly based upon the information Madison provided about the Louis Vuitton purse and diamond earrings. (*See* ECF No. 98-2.)

---

[1] Felix's bad-faith counterclaim was dismissed at the summary judgment stage. (*See* ECF No. 72.)

-2-

Madison and Felix frequently exchanged text messages after the fire. In most of these text-message exchanges, Felix inquired about the whereabouts of the Louis Vuitton purse. (ECF No. 116 ¶¶ 10-11, 15-16; ECF No. 142 ¶ 18.) In other text messages, Felix repeatedly asked Madison to speak on the phone or meet up in person. (ECF No. 116 ¶ 18.) Felix also sent messages to Madison where Felix mentioned Madison's family. For instance, Felix told Madison in one text message that "it would get very bad for [Madison] and her family if she didn't say the right thing." (*Id.* ¶ 16.) In another, Felix stated that "this will get ugly in court for [yo]u and [yo]ur family." (*Id.*)

On June 8, 2016, Madison sent ANPAC's counsel screenshots of some text-message exchanges between her and Felix. (*See* ECF No. 116-5.) Madison later used a phone application called "Email My Texts" to convert her text-messages exchanges with Felix to document format. (ECF No. 127 ¶¶ 13-14.) She sent 160 pages of reproduced text messages to ANPAC's counsel. (*Id.* ¶¶ 12-13.)

Madison was also deposed in this case. (ECF No. 100 ¶¶ 12-13.) At her deposition, Madison testified that she thought Felix encouraged her to lie about the whereabouts of the purse and earrings during ANPAC's investigation. (*Id.*) Madison also testified that she felt that Felix began to threaten her when she would reject his alleged requests to lie. (ECF No. 116 ¶¶ 18-19.) Specifically, Madison testified that Felix threatened to accuse her of starting the fire at Felix's house. (*See id.* ¶ 17; ECF No. 118-6 at 160-62.)

## II. Discussion

### A. Text Messages Between Madison and Felix

Both ANPAC and Felix filed Motions related to evidence of text-message exchanges between Madison and Felix—Felix argued for their exclusion and ANPAC argued for their admission. (*See* ECF No. 96, 116.)

Felix argues that the copies of the text messages that Madison sent to Felix are inadmissible because they were never authenticated. (ECF No. 96 ¶¶ 14-18; ECF No. 97.) In the alternative, Felix argues that the text messages between Felix and Madison are irrelevant under Rule 401 and that Felix will be unduly prejudiced by their admission. (ECF No. 97 at 3-4.) *See also* FED. R. EVID. 401; 403.

In response to Felix's Motion, ANPAC argues that the text messages are properly authenticated because Felix admitted in his deposition that the copies of the text messages that Madison provided to ANPAC's counsel are accurate reproductions of the text messages he sent to Madison. (ECF No. 155 at 3.)

In its Motion, ANPAC argues that the text messages between Madison and Felix are relevant under Rule 401 and admissible under Rule 404 because they show Felix's "consciousness of guilt" and Felix's efforts to conceal his fraud against ANPAC. (ECF No. 117 at 3.) *See also* FED. R. EVID. 401; 403. Specifically, ANPAC argues that Felix knew Madison had the purse that Felix claimed was destroyed in the fire. (*Id.* at 4.)

### 1.   The Reproductions of the Text-Message Exchanges Between Madison and Felix are Properly Authenticated

The Court finds that the text messages between Madison and Felix are properly authenticated. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). To meet the authentication requirement, the party offering the evidence can produce a witness with knowledge to testify that an item is what it is claimed to be. Fed. R. Evid. 901(b)(1).

Here, Madison and Felix properly authenticated their text-message exchanges when they testified during their depositions that the text messages Madison produced to ANPAC's counsel were accurate reproductions of the original messages. (ECF No. 155 at 5.) Both Madison and Felix have firsthand knowledge of the text messages they sent and received. And although Felix testified that there were other text messages that ANPAC's counsel did not obtain, Felix admitted that the copies of the text-message exchanges that ANPAC's counsel showed him were legitimate and accurate reproductions. (*Id.*) Therefore, Felix's argument that the text-message exchanges could have been inaccurately reproduced whenever Madison utilized the phone application "Email My Texts" to provide ANPAC's counsel with copies of the messages is unpersuasive.

Moreover, courts have held that deposition testimony by a witness with firsthand knowledge is a proper means to authenticate a piece of evidence. *See, e.g. Bouriez v. Carnegie*

*Mellon Univ.*, No. 02-cv-2104, 2005 WL 2106582, *5 (W.D. Pa. Aug. 26, 2005) (holding that documents were properly authenticated in discovery by a witness with knowledge).

Accordingly, the Court finds that the text-message exchanges between Madison and Felix are properly authenticated.

### 2. The Text-Message Exchanges Between Madison and Felix are Relevant and Probative

The Court finds that the text-message exchanges between Madison and Felix are relevant to important issues in this case. Under Rule 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Here, the text messages between Madison and Felix involve to the whereabouts of the Louis Vuitton purse and diamond earrings, which is the key issue underlying ANPAC's declaratory judgment and insurance-fraud claims. Moreover, the text messages are also relevant to Felix's behavior after the fire because the messages can be used to show Felix's motive, knowledge, plan, and a consciousness of guilt.

Similarly, the Court finds that evidence of the text messages between Madison and Felix are admissible under Rule 404. Under Rule 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a). "However, [t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). The Third Circuit has held admissibility under Rule 404(b) requires: (1) a proper evidentiary purpose; (2) relevance under

Rule 402;[2] (3) a weighing of the probative value of the evidence against its prejudicial effect under Rule 403; and (4) a limiting instruction. *United States v. Mastrangelo*, 172 F.3d 288, 294-95 (3d. Cir. 1999) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

The Court firstly finds that ANPAC is introducing the text-message exchanges for a proper purpose. Felix's text messages to Madison can be used to show that Felix knew that the Louis Vuitton purse was not destroyed in the fire and that Felix knew that he defrauded ANPAC. Similarly, these same messages can be used to show that Felix planned to misrepresent that certain items were destroyed in the fire. Further, the messages in which Felix allegedly threatened Madison can be used to show that Felix had a consciousness of guilt. *See e.g., Johnston v. Love*, 940 F. Supp. 738, 751 (E.D. Pa. 1996); *United States v. Bamberger*, 940 F.2d 1119, 1126 (3d Cir. 1972) (holding that evidence of "consciousness of guilt" serves a proper evidentiary purpose).

The Court further finds that the probative value of the text messages between Madison and Felix substantially outweighs any prejudice they may cause Felix. *See* FED. R. EVID. 403. As previously discussed, the Court finds that the messages have significant probative value to important issues in this case, namely whether Felix knowingly misrepresented that certain items of property were destroyed in the fire. And while the messages may paint Felix in a negative light, these messages will not unfairly prejudice Felix because he may rebut ANPAC's presentation of the text messages and offer his own explanations for their meaning at trial.

---

[2] Rule 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." FED. R. EVID. 402. Here, the Court finds that the relevance of this evidence is not barred by the Constitution, a federal statute, or another rule prescribed by the Supreme Court. Therefore, the Court finds that evidence that Felix broke in to Merrill's house is admissible so long as it meets the requirements for character evidence under Rule 404.

Accordingly, the Court finds that evidence of the text-message exchange between Madison and Felix is relevant and that its probative value substantially outweighs any prejudice it may cause. Because this evidence would be admitted under Rule 404, the Court would instruct the jury on its limited purpose.

### B. Madison's Trial Testimony that She Thought Felix Wanted Her to Lie

Felix argues that Madison should not be permitted to testify at trial that she thought Felix was subtly asking her to lie about the whereabouts of the Louis Vuitton purse and to cease her cooperation with ANPAC. (*See* ECF Nos. 100, 101.) Felix argues that this evidence is irrelevant under Rule 401 and unduly prejudicial under Rule 403. (ECF No. 101 at 2-4.) *See also* FED. R. EVID. 401; 403. The Court disagrees.

Here, as previously discussed, the Court finds that Madison's testimony that she thought Felix wanted her to lie is relevant to Felix's alleged knowledge that he committed insurance fraud, his alleged plan to cover up his fraud, and Felix's consciousness of guilt. Accordingly, the Court finds that this testimony is relevant under Rule 401. The Court also finds that the probative value of this evidence outweighs any potential prejudice to Felix because Felix will be able to testify about his intentions.

Moreover, this evidence is relevant because ANPAC alleges that Felix was attempting to threaten Madison. "Evidence of threats or witness intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt." *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993); *United States v. Cothran*, 284 F.3d 173, 167 (3d Cir. 2002) ("In determining whether something is a threat, 'proof of the effect of the alleged threat upon the addressee is highly relevant.'").

Therefore, the Court will not preclude Madison from testifying that she thought that Felix wanted her to lie to ANPAC.

### III. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Felix's Motion *in Limine* #9 to Exclude Text Messages Between Daniel J. Felix and Kelly Madison (ECF No. 96) and Felix's Motion *in Limine* #10 to Preclude Kelly Madison From Testifying at the Time of Trial that She Thought Daniel J. Felix Wanted Her to Lie (ECF No. 100) are **DENIED. IT IS FURTHER ORDERED** that ANPAC's Motion in Support of the Admissibility of E-Mails and Text Messages Between Daniel Felix and his Ex-Fiancée is **GRANTED**.  (ECF No. 116.)

DATED: November 21, 2018

BY THE COURT:

KIM R. GIBSON
**UNITED STATES DISTRICT JUDGE**